Charles H. Phelps, Plaintiff in Error, v. The People of the State of New York, Defendant in Error.

Under the provision of the Revised Statutes (2 R. S., 673, § 34), declaring that "every person who, *with intent to defraud*, shall make any false entry * * in any book of account kept in the office of the Comptroller of the State," or other State officers, shall, upon conviction, be adjudged guilty of forgery in the third degree, it is not necessary that the intent be to obtain money, or cause the loss of money directly by means of the false entry. The words "intent to defraud" are used as synonymous with fraudulent intent or purpose, to distinguish the case from one of an erroneous or fictitious entry innocently made.

Where, therefore, an employee in the office of the State Treasurer, having charge of the books of account and the deposits, made a false entry of a deposit in bank, as a part of a criminal scheme to purloin the funds of the State, or to temporarily cover up a defalcation; *held*, that this was an "intent to defraud," within the meaning of the statute.

Where an indictment contains a number of counts, all, however, based upon the same offense, varying simply as to the description, so as to meet the proof, and a conviction thereunder is general on all the counts, if there is one good count in the indictment and evidence to support it, it is sufficient to sustain the conviction, although the other counts are defective.

It is immaterial in such case that the trial court held the defective counts to be good, admitted evidence to sustain them, and refused to direct an acquittal under them, as the rulings could not have prejudiced the accused.

*Wood* v. *The People* (59 N. Y., 117), distinguished.

A count in an indictment under said statute alleged a false entry in a book containing an account between the People and the "*Mechanics and Farmers' Bank*;" after setting forth the false entry, it was alleged "that the *aforesaid* account between the People * * * and *said Farmers and Mechanics' Bank*, after such false entry was to the tenor following," etc. *Held*, that the discrepancy in the name of the bank did not affect the validity of the count, as it appeared upon the face thereof to be a mere clerical error, which could not possibly have misled or prejudiced the accused. (2 R. S., 728, § 52.)

Also, *held*, that a variance in the date of an item of the account, as set forth in the indictment, from the account proved, was immaterial when said item preceded the date of the false entry some six months, and a balance of the account had been twice struck after the item and prior to the false entry.

(Argued January 15, 1878; decided February 5, 1878.)

ERROR to the General Term of the Supreme Court, in the third judicial department, to review judgment of the General Term of the Supreme Court in the third judicial department, affirming judgment of the Court of Oyer and Terminer of the county of Albany, entered upon a verdict convicting the plaintiff in error of the crime of forgery in the third degree. (Reported below, 6 Hun, 428.)

The facts appear sufficiently in the opinion.

*William J. Hadley,* for plaintiff in error. In an indictment for forgery, the instrument alleged to be forged should be set forth in words and figures, or some sufficient reason alleged why it is not. (2 East P. C., 975, § 53; id., 985, § 58; 1 Chitty C. L. [5th Am. ed.], 233; 3 id., 1039*b*–1041; 2 Russ. on Crimes [4th Am. ed.], 359; Whart. C. L. [3d ed.], 174, 281, 283, 287; *People* v. *Kingsley,* 2 Cow., 522; *Comm.* v. *Houghton,* 8 Mass., 107; 1 Bish. Cr. Prac. [2d ed.], §§ 553, 559–561; 2 id., §§ 403–406; *Rex* v. *Lyon,* 2 Leach [3 Lond. ed.], 681, 696.) The variance between the indictment and the proof was fatal. (*Reading's Case,* 2 Leach [3d Lond. ed.], 672; *Lyon's Case,* id., 681; *Gilchrist's Case,* id., 753; 2 East Pl. Cr., 981–984; Rosc. Cr. Ev., 510, 511; 1 Bish. Cr. Pro., § 485, 490–559; 2 id., § 416; *U. S.* v. *Hardyman,* 13 Pet.; 176; *Comm.* v. *King,* 9 Cush., 287; *Rastall* v. *Stratton,* 1 H. Black, 49; *People* v. *Jones,* 5 Lans., 340; 3 Gr. Ev., 65; *Hunter's Case,* 2 Leach Cr. Cas. [3d Lond. ed.], 711; *Mason's Case,* id., 548; *People* v. *Warner,* 5 Wend., 272.) The false entry could not prejudice or in any way affect any person, body or corporation in his estate or property, and could not be made the foundation of any legal liability. (4 Bl. Com., 247; 2 East Pl. Cr., 840; 3 Gr. Ev., § 103; 2 Bish. Cr. L. [5th ed.], § 523; *Wall's Case,* 2 East Pl. Cr., 953; *Moffat's Case,* 2 Leach [3d Lond. ed.], 483; *Reg.* v. *Hodgson,* D. & B. Cr. Cas., 3; *People* v. *Shall,* 9 Cow., 778; *People* v. *Fitch,* 1 Wend., 198; *People* v. *Galloway,* 17 id., 541; *People* v. *Stearns,* 21 id., 409, 413; *People* v. *Wilson,* 6 J. R., 320; *People* v. *Harrison,* 8 Barb.,

560; *Cunningham* v. *People*, 4 Hun, 455; *Rex* v. *Wavell*, Moody Cr. Cas., 224; *Reg.* v. *Marcus*, 2 C. & K., 356; *Ex parte Winsor*, 6 B. & S., 528; 10 Cox Cr. Cas., 118; *State* v. *Young*, 46 N. H., 266; Ham. Dig., chap. 1, § 2, p. 102; *Rex* v. *Knight*, 1 Salk., 375; 1 Bish. Cr. L. [5th ed.], §§ 572, 748.) The court erred in refusing to charge that, upon the whole facts in the case, the prisoner was not guilty of the crime of forgery. (*People* v. *Shall*, 9 Cow., 778; *People* v. *Fitch*, 1 Wend., 198; *People* v *Galloway*, 17 id., 540; *People* v. *Stearns*, 21 id., 409, 413; *People* v. *Wilson*, 6 J. R., 320; 4 Hun, 455; 8 Barb., 560; *Reg.* v. *Marcus*, 2 C. & K., 360; 1 Bish. Cr. L. [5th ed.], §§ 572, 748; 46 N. H., 266.) The court erred in refusing to charge that the prisoner could not be convicted because the making of such false entry had no legal tendency whatever to injure or defraud the people of the State or the bank. (8 Barb., 560; 2 C. & K., 354; *People* v. *Cady*, 6 Hill, 490; 1 Bish. Cr. L. [5th ed.], §§ 572, 748; 2 id., §§ 523, 533, 543, 586, 599; *People* v. *Galloway*, 17 Wend., 540; *People* v. *Fitch*, 1 id., 199; *People* v. *Shall*, 9 Cow., 778.) It was also error to refuse to charge that the entry charged to be false and fictitious was not properly set forth in the indictment. (2 East Pl. Cr., 975, 985, §§ 53, 58; 1 Chitty's Cr. L., 233; 3 id., 1039 *b*, 1040, 1041; *Rex* v. *Lyon*, 2 Leach, 681 ; *People* v. *Kingsley*, 2 Cow., 522; *Comm.* v. *Houghton*, 8 Mass., 107; *People* v. *Warner*, 5 Wend., 272.)

*Nathaniel C. Moak*, for defendants in error. The facts in this case were amply pleaded, and the indictment good. (*People* v. *Loop*, 3 Park. Cr., 559; *Quinlan* v. *People*, 6 id., 9; *Low* v. *People*, 2 id., 37; *Wilson* v. *People*, 6 id., 178; *Haskins* v. *People*, 16 N. Y., 344, 347, 348; *People* v. *Clements*, 26 id., 197, 198; *People* v. *Rynders*, 12 Wend., 431; *Holmes* v. *People*, 15 Abb. Pr., 154; *Rosekrans* v. *People*, 5 N. Y. S. C. R., 467, 475; *Rex* v. *Sommerton*, 7 B. & C., 463.) The indictment was proper and valid in form. (*Bar-*

*num* v. *State*, 17 Ohio, 717; Warren's Ohio Cr. L., 515; *Biles* v. *Comm.*, 32 Penn. St., 529; 5 N. Y. S. C. R., 474, 475; Arch. Cr. Pr. & Pl. [17th Eng. ed.], 592; *Ream* v. *Comm.*, 3 S. & R., 207; *Comm.* v. *Williams*, 9 Metc., 273.) The false entry was a forgery at common law, independent of the statute, and the prisoner could have been convicted without the statutory provisions. (5 N. Y. S. C. R., 472, 473; 2 Bish. Cr. L. [5th ed.], §§ 596, 597; 32 Penn. St., 529, 538; 9 Cox Cr. Cas., 162, 165; 2 Whart. Cr. L. [7th ed.], § 1431.) It was proper to charge the offense in various forms. (*Davis* v. *People*, 56 N. Y., 95, 101 ; *La Beau* v. *People*, 33 Howard's Practice, ö9 ; *Nelson* v. *People*, 5 Park, 39 ; *Osgood* v. *People*, 39 N. Y., 449, 451; *Kane* v. *People*, 8 Wend., 210, 211; *People* v. *White*, 55 Barb., 606, 611.) The prisoner having been convicted on all the counts, if there was a single good one, the conviction was valid. (56 N. Y., 95, 100; *Gunther* v. *People*, 24 id., 100; *Crichton* v. *People*, 6 Park. Cr., 363; 1 Keyes, 344; 1 Abb. Ct. App. Dec., 470; *People* v. *Stein*, 1 Park. Cr., 202; *Baron* v. *People*, id., 246; 4 id., 26; 33 How. Pr., 70; *Fraser* v. *People*, 54 Barb., 306, 308; *People* v. *Herrick*, 13 Wend., 91, 92; *Bretschofsky* v. *People*, 3 Hun, 40; 60 N. Y., 616; *Lyons* v. *People*, 68 Ill., 272; *Latham* v. *The Queen*, 9 Cox Cr. Cas., 516; *Cooke* v. *State*, 49 Miss., 9; *Estes* v. *State*, 55 Geo., 131; *Adams* v. *State*, 52 id., 565; *Chappell* v. *State*, 52 Ala., 359; 1 Bish. Cr. Prac. [2d ed.], § 1015; 3 Whart. Cr. L. [7th ed.], §§ 3208, 3209; *People* v. *Gonzales*, 35 N. Y., 60; *Wood* v. *People*, 61 id., 117.) The inaccuracy in stating the date of the entry in the indictment was not a material variance. (*Real* v. *People*, 55 Barb., 552, 579, 580; 1 Abb. Ct. App. Dec., 470, 471; *Miller* v. *People*, 52 N. Y., 304; *Wilson* v. *People*, 5 Park. Cr., 179, 180; *People* v. *McGinnis*, 1 id., 391; *People* v. *Treadway*, 3 Barb., 470; *People* v. *Phelps*, 5 Wend., 10 ; *People* v. *Warner*, id., 271 ; *Tuttle* v. *People*, 36 N. Y., 436 ; *May* v. *State*, 14 Ohio, 466 ; *O'Neil* v. *State*, 48 Geo., 66, 77 ; *Clark* v. *Gleason*, 30 Mich., 159 ;·

Wells. Ques. of Law & Fact, §§ 46, 47; 1 Bish. Cr. Prac. [5th ed.], § 338; *Comm.* v. *Davis*, 11 Gray, 4, 8, 9; *Comm.* v. *Riggs*, 14 id., 376, 377; *Hess* v. *State*, 5 Ohio, 8; *Dubois* v. *Baker*, 30 N. Y., 361; 35 id., 60; *State* v. *Givens*, 5 Ala., 747; *Perkins* v. *Comm.*, 7 Grat., 651, 654; *Zislick's Case*, 1 East, 181, note; 2 East Pl. Cr., 925; *Comm.* v. *Ross*, 2 Mass., 373; *Buckland* v. *Comm.*, 8 Leigh [Va.], 732, 736; *Hoffman* v. *Comm.*, 6 Rand. [Va.], 685; *Turpin* v. *State*, 19 Ohio St., 540, 545; *U. S.* v. *Hinman*, Bald. C. C., 393, 394.) The point that the prisoner could not be convicted, if he made the false entry to cover up and conceal a previous defalcation, and that neither the bank nor the State lost anything by the entry, was not well taken. (32 Penn. St., 537; 15 Ohio St., 717, 720, 721; *Comm.* v. *Williams*, 9 Metc., 276; 3 S. & R., 207; *State* v. *Rhoades*, 6 Nev., 353, 376; 1 Greenl. Ev., §§ 483, 484; *Bissell* v. *Hamblin*, 6 Duer, 512–514; 2 Bish. Cr. L. [6th ed.], §§ 596–603; 1 R. S., 176, § 1; 1 Edm. Stat., 177; id., 177, § 7; id., 178; id., 178, §§ 10, 11, 13; id., 　; *Paige* v. *People*, 3 Abb. Ct. App. Dec., 439, 447, 448; 4 Al., 301, 304; 9 id., 275; 2 Whart. Cr. L. [7th ed.], § 1493; *U. S.* v. *Taintor*, 11 Blatch., 378, 379; *People* v. *Rathbun*, 21 Wend., 509, 521; *People* v. *Stearns*, id., 409, 413–418; 2 Whart. Cr. L. [7th ed.], § 1493; *Reg.* v. *Feeny*, A. Mac. & O., 193; 21 Wend., 418, 419.) It was not necessary that the indictment should have charged an intent to defraud the State. (2 R. S., 552, § 13; 2 Edm. Stat., 573; *People* v. *Bennett*, 37 N. Y., 126; 2 Story on Const., §§ 1679–1686; 1 R. S., 165, § 15; 1 Edm. Stat., 164; *People* v. *Bennett*, 37 N. Y., 126–129; *Texas* v. *White*, 7 Wal., 721; *Collector* v. *Day*, 11 id., 124; *State of N. Y.* v. *State of Conn.*, 4 Dal., 1; 1 R. S., 65, § 3; 1 Edm. Stat., 79; id., 172, §§ 13–17; id., 172; id., 179–181, §§ 1–17; id., 180–182; 2 R. S., 703, §§ 35, 36; 2 Edm. Stat., 726.) There was no error in admitting in evidence the prisoner's letters to the treasurer. (*Weed* v. *People*, 56 N. Y., 628; *Oofferman* v. *People*, 3 N. Y. S. C. R., 199; 56 id.,

591 ; *Rex* v. *Moore*, 2 C. & P., 235 ; *Reg.* v. *Briggs*, 2 M. & R., 199.)

RAPALLO, J.   The plaintiff in error was convicted of forgery in the third degree, for having made a false entry in a book of accounts kept in the office of the State Treasurer, whereby, in an account in such book between the Treasurer and the Mechanics and Farmers' Bank of Albany, the latter was debited with a deposit or transfer of the sum of $200,000.

The plaintiff in error was a clerk in the office of the Treasurer, having the title of cashier.   His duties were to receive moneys and securities belonging to the State, which came to the hands of the Treasurer, and to deposit them in bank ; to keep the accounts between the State and the deposit banks, and other accounts.   The false entry in question was made on the 31st of August, 1873.   In the beginning of October, 1873, he left the office and fled to the State of New Jersey, and it was then discovered that he had misappropriated a large amount of the funds of the State.   On the 4th of October, 1873, he wrote to the Treasurer, admitting his defalcation, and attributing it to serious losses in heavy speculations nearly six months previous, and stating that he had carried the burden so long, from the simple fact that his figures, as to the amount on deposit, had never been questioned ; but that complaints made by the banks the week previous, and the consequent investigations, necessitated his avowing that he could not make his account good.

He was indicted under section thirty-four of 2 Revised Statutes, 673, which provides, that " every person who, *with intent to defraud*, shall make any false entry, or shall falsely alter any entry made, in any book of accounts kept in the office of the Comptroller of this State, or in the office of the Treasurer, or of the Surveyor-General, or of any county treasurer, by which any demand or obligation, claim, right or interest, either against or in favor of the people of this State, or any county or town, or any individual, shall be, or shall purport to be, discharged, diminished, increased, cre-

ated, or in any manner affected, shall, upon conviction, be adjudged guilty of forgery in the third degree."

The indictment contains numerous counts, in some of which the false entry is alleged to have been made with intent to defraud the Mechanics and Farmers' Bank of Albany, and in others, with intent to defraud the people of the State of New York.

The counsel for the plaintiff in error takes the point that the entry was made for the sole purpose of concealing for a time his previous defalcations, and that if made for that purpose he could not be convicted of the crime of forgery. He claims that the false entry could not operate to defraud either the State or the bank, because it could have no legal tendency to effect any fraud, or affect the property, rights, or interests of any one. That he never realized, or could realize, any sum whatever by making the entry, nor could the State or the bank be losers thereby to any amount. This was the theory of the defense, and the point is raised by numerous exceptions to rulings at the trial, to the charge, and to refusals to charge, which it is not necessary to refer to in detail, for in substance they raise the same point stated in different forms.

We do not think that the construction of the statute upon which this point is founded can be maintained. The statute, it is true, requires that the false entry be made with intent to defraud, but it is not necessary that the intent be to obtain money or cause the loss of money, directly by means of the false entry. The words " with intent to defraud " are used as synonymous with the words, " with fraudulent intent," or " for a fraudulent purpose," to distinguish the case from one of an erroneous entry, made through mistake or under a misapprehension of a right, or such fictitious entries as are sometimes made for book-keeping purposes, or otherwise innocently. When, as in this case, as admitted by the plaintiff in error, the false entry was part of a criminal scheme to purloin the funds of the State, and to conceal and temporarily cover up the defalcation and thus, to use the

words of the plaintiff in error, to enable him to "carry the burden" for a long time by means of the reliance placed upon his false figures as to the amount on deposit, and thus continue in a position where the scheme of purloining money could continue, there was a fraudulent intent sufficient to satisfy the statute. The entry in question was made on the 31st of August, 1873, and so covered up the previous offenses that the plaintiff in error was enabled to continue in his position until October second or third, when he fled from fear of the discovery which would result from an expected investigation. The jury had a right to infer from the evidence and the letter of October fourth that the entry was made with intent to enable the plaintiff in error to retain the fruits of his depredations, or to continue them, and that he had continued them during this interval. But even if the only purpose the defendant had immediately in view in making the false entry, was to cover up his previous defalcations, the natural effect of such concealment was to delay detection and pursuit, and thus obstruct the State in obtaining redress and restitution. This was in itself an injury. (*Cont. Bank* v. *Bk. of Commonwealth*, 50 N. Y., 575.) And the law would attach to the concealment, the intent to accomplish the result to which it naturally tended.

The fraudulent intent is so apparent from the evidence, that it is not necessary to follow the learned counsel for the people in his argument, as to the effect which the entry, unexplained, would have as evidence, which might affect the rights of the State or of the bank, in the contingencies which he has suggested.

Objection was taken on the trial to the form of the first forty-eight counts of the indictment, on the ground that the false entry was not set out in words and figures in those counts, and numerous authorities are cited holding that a copy of the instrument alleged to be forged must be set out in the indictment. This point was raised by objection to receiving the entry in evidence under those counts, by motion to direct the jury to acquit the defendant under them, by a

request to charge that the defendant could not be convicted under either of them, and by motion in arrest of judgment.

The allegation in the first count, descriptive of the forged entry, is, that it was "a false entry in a book of accounts commonly called a ledger, kept in the office of the Treasurer of the State of New York, by which a *demand* in favor of The People of the State of New York against The Mechanics and Farmers' Bank of Albany was *created* for the sum of $200,000." In the succeeding forty-seven counts the language is varied so as to include the several terms used in the statute, viz., demand, obligation, claim, right, interest, increased, affected, etc., etc., and to vary the allegation as to the party intended to be defrauded, etc. The other counts set forth a copy of the false entry.

The counsel for the people claims that the counts objected to are good, being in the words of the statute upon which the indictment is founded; but whether this position be sound or not, he contends that the conviction being general on all the counts, and they being all based upon the same offense, merely varying the description so as to meet the proofs, if there is any one good count in the indictment, it is sufficient to sustain the conviction.

This proposition is fully sustained by the authorities cited by the counsel for the people, and we regard it as settled law. There being evidence in support of the good counts, and the jury having convicted upon them, as well as upon those claimed to be defective, it is clear that it was quite immaterial that the court held the last-mentioned counts to be good, and admitted evidence to sustain them, and refused to direct an acquittal under them, as those rulings could not have varied the result or prejudiced the defendant, and therefore, even if erroneous, are not ground of reversal. (*People* v. *Gonzalez*, 35 N. Y., 100; *Real* v. *The People*, 42 id., 270.) The case of *Wood* v. *The People* (59 N. Y., 117) does not conflict with this rule; that was a prosecution for perjury. Several distinct assignments of perjury were contained in the indictment in a single count. Some of them

were not sustained by proof, and others were defective in form, in not showing that the testimony alleged to be false was material to the issue, and the attention of the court was expressly called to these particular assignments, with a request as to each that it be withdrawn from the consideration of the jury. The refusal of these requests was held error, inasmuch as the several assignments charged distinct offenses, and the jury might have based their verdict of guilty on the count, upon those assignments which were insufficiently alleged or unsustained by proof of the materiality of the matter falsely sworn to. That case is clearly distinguishable from the present, where but a single offense was attempted to be proved, and a single sentence could be or was imposed, and the several counts were simply different versions of the same transaction. If, in either of the counts, the offense proved and found by the jury was sufficiently set forth, the defendant cannot have been prejudiced by the rulings as to the others.

Exceptions were taken to receiving in evidence the false entry, which was set out in the remaining forty-eight counts, and to the rulings of the court in refusing to direct an acquittal on those counts, or to charge that the defendant could not be convicted under them. The first objection urged to those counts was that they alleged that the false entry was made in a book containing an account between the people and the " *Mechanics and Farmers'* " Bank, and in said account a copy of the false entry is there set forth, and the count proceeds to allege " that *the aforesaid* account between the People of the State of New York and the said ' *Farmers and Mechanics' Bank* ' of Albany, after such false entry was to the tenor following," etc.

We think this discrepancy in the name of the bank appeared upon the face of the count to be a mere clerical error, which could not possibly have misled or prejudiced the defendant. The account was accurately stated to have been between the People and the Mechanics and Farmers' Bank. That bank is named throughout the indictment as

the party in whose account the false entry was made, and the concluding paragraph referring to the account as "the aforesaid account" between the People and the said Farmers and Mechanics' Bank clearly shows that the inaccuracy in repeating the name was an accidental slip, the means of correcting which appear upon the face of the indictment itself.

It was further objected that there was a variance between the account as set forth in the indictment, and as proved upon the trial, in this, that in an entry in such account of $125,000, the date of the entry is set out in the indictment as November twenty-eighth; whereas it is claimed that in the account proved upon the trial the date is November eighteenth. The entry is in the handwriting of the defendant, and on inspection the figures bear quite as much resemblance to twenty-eight as to eighteen. The court on the trial held, on inspection, that they were twenty-eighth. But this is clearly a frivolous objection, for the part of the account in which these figures are contained has no connection with the false entry, or the portion of the account in which that entry is contained. It relates to a period nearly six months previous to the date of the false entry, and the balance of the account had been struck twice in the meantime. That part of the account in which the alleged variance is contained was wholly immaterial and need not have been set out in the indictment.

The character of the false entry, and its effect upon the account, were fully shown by that part of the account which followed the last balance struck. The alleged variance, if it existed, could not have misled or prejudiced the prisoner, and it was not established as matter of fact.

Numerous exceptions were taken to the charge and to refusals to charge, but they all depend substantially upon the points already discussed. We find none which would justify us in reversing the judgment. The errors assigned by the plaintiff in error relate almost entirely to mere matters of form, to which the provisions of 2 Revised Statutes, 728, § 52, are, in our judgment, applicable. That section provides that no indictment shall be deemed invalid, nor shall

the trial, judgment or other proceedings thereon be affected by certain enumerated defects, nor "by reason of any other defect or imperfection in matters of form which shall not tend to the prejudice of the defendant."

The judgment should be affirmed.

All concur.

Judgment affirmed.