THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENTS, *v.* WILLIAM MENKEN, APPELLANT.

*Pleadings in criminal case — how affected by the Code of Criminal Procedure, secs. 273, 275, 323 — form of indictment — motion in arrest of judgment — when a verdict will not be set aside because of the misconduct of the jurors.*

Sections 273 and 275 of the Code of Criminal Procedure, abolishing the existing forms of pleadings in criminal cases, and providing that thereafter the form and sufficiency of such pleadings should be determined by the rules therein prescribed, was only intended to enable the pleader to set forth the accusation against the prisoner plainly and precisely, without unnecessary repetition. They were not intended to limit the indictment to a single statement, in one count, of the offense charged, or to deprive the people of the right to state the acts constituting the supposed crime in different counts, in language appropriate to meet such circumstances and features of the event as should be developed by the evidence given upon the trial.
*People* v. *Rugg* (98 N. Y., 537) followed.
Where there is one good count in an indictment, and evidence to support it, a conviction will be sustained, although other counts contained in the indictment are defective.
On December 9, 1884, the defendant moved in arrest of judgment, upon the ground that "Lieutenant-Governor Hill, who, it is known, is to be governor of the State of New York on the first day of January next, and to whom any application of pardon for defendant must be made, appeared as counsel for the People in this case."
*Held,* that the motion was properly denied.
That there was no provision in the Constitution or statutes of this State which prevented the lieutenant-governor from aiding a district attorney in the prosecution of a capital case.

That as the ground upon which the motion was made was not specified in section 323 of the Code of Criminal Procedure, and as the enumeration there of the grounds upon which such a motion might be made was probably intended to exclude its being made upon any other ground, the denial of the motion was, for that reason, proper.

The verdict of a jury in a criminal case will not be set aside for irregular or improper conduct upon the part of the jurors, unless it be shown that the defendant was prejudiced thereby.

APPEAL from a verdict and conviction of murder in the first degree, and the judgment entered thereon.

On the evening of the 6th of January, 1884, while some lads were hunting for rabbits in the western portion of Woodlawn cemetery, in the town of Elmira, in the county of Chemung, and they were near the western boundary of that cemetery, one of the lads, on looking through a board fence, saw an object under the bridge in what is known as "Heller's creek," which attracted his attention; upon a closer investigation it was discovered to be the body of Katie Bredehoft. Intelligence of the discovery was communicated to the proper officials, and prompt efforts were made to discover the identity of the remains and the circumstances preceding and attending her death. The investigation led to the arrest of the defendant in Flatbush, and the discovery in his possession of articles of jewelry and personal property of the deceased. The defendant was indicted, charged with having feloniously caused the death of Katie Bredehoft, and a trial was had in the Chemung Oyer and Terminer in April, 1884. During the trial an order was made for the jury to visit the place where the remains were discovered, and the jury did so, without the presence of the prisoner or his counsel. It subsequently turned out that there was on the left side of the bridge, and standing on a line with the planking which extended out over the side of the bridge, a small post between two and three feet in height, and that between the time when the order was made for the jury to visit the place and the time when they in fact visited it, that post was, by some person or persons unknown, removed and the hole thereby occasioned filled up. After the conviction of the defendant a motion was made for a new trial, based upon the irregularity already referred to, and it was granted by the judge presiding at the Oyer and Terminer where the conviction took place.

Subsequently the venue of the action was changed from the county of Chemung to the county of Broome, and a second trial was had in the month of December, 1884, at Binghamton, which resulted in a conviction of the defendant of the crime of murder in the first degree. After the rendition of that verdict a motion in arrest of judgment was made and denied, and a motion to set aside the verdict for alleged irregularities of the jury was made upon affidavits, and opposed by affidavits tending to explain and overcome the affidavits used in behalf of the motion. That motion was also denied, and the papers used in connection therewith have been, by an order of this court, annexed to the judgment-roll. January 15, 1885, the defendant served a notice of appeal to this court "from the verdict and conviction of murder in the first degree, and the judgment and sentence in this action, by which sentence said defendant is condemned to be hung on the 1st day of January, 1885, and which verdict and conviction was rendered and had on the 5th day of December, 1884, and which judgment and sentence was rendered and pronounced on the 9th day of December, 1884." No bill of exceptions has been settled and signed as authorized by sections 456 and 461 inclusive of the Code of Criminal Procedure, and no printed case was brought before this court. The appeal was brought on for argument upon the judgment record and copies of the affidavits used upon the motion for a new trial.

*Gabriel L. Smith*, for the appellant.

*John B. Stanchfield*, district attorney, for the People.

HARDIN, P. J.:

By an inspection of the record we find that the indictment against the defendant contained nine counts. In the Oyer and Terminer, held in April, 1884, the defendant interposed a demurrer to the indictment, and the people made answer to that demurrer, and thereupon an argument was had before the court, and the demurrer was overruled. In the statement of the grounds of demurrer found in the record, we find the following language used by the defendant, viz.: "He demurs to said indictment as a whole, for that the same does not conform substantially to the requirements of sections 275 and 276 of chapter 442 of the Laws of 1881, entitled an act to

establish a Code of Criminal Procedure and the several amendments thereto ; and among other reasons why the same did not conform to the said sections, this defendant alleged that said indictment did not contain a plain and concise statement of the acts constituting the crime charged in the indictment without unnecessary repetition.

" 2. He demurs to that portion of the indictment which is written before the second count, and which is supposed to be the first count, for that the same does not conform substantially to the requirements of sections 275 and 276 of the Code of Criminal Procedure of the State of New York:

"*First.* That it does not contain a plain and concise statement of the acts constituting murder in the first degree without unnecessary repetition.

"*Second.* That it does not allege that the acts charged against the defendant were committed with a design to effect death.

" *Third.* That it does not allege that the said defendant, her the said Katie Brcdehoft, willfully and feloniously did kill and murder.

"*Fourth.* That it does not contain a plain and concise statement of the acts of the defendant which it alleged constituted the crime of murder in the first degree committed by him.

"*Fifth.* That there is in said count much unnecessary repetition.

"*Sixth.* That the acts charged in the said count to have been committed by said defendant do not constitute the crime of murder in the first degree."

He also stated substantially the same grounds of objection or demurrer to the second, third, fourth, fifth, eighth and ninth counts, and then follows in the indictment a statement, as follows, viz. : " Said defendant alleges in support of each and every hereinbefore set forth demurrers, that said indictment and each count thereof sets forth much immaterial matter and many immaterial allegations, which are improper and unlawful to set forth in said indictment, and which is wrongfully and unlawfully set forth in said indictment to. the great hurt and prejudice of said defendant, and that there is much unnecessary repetition contained in said indictment and in each count thereof, which is improperly and wrongfully set forth therein to the great hurt and prejudice of said defendant, and that said indictment contained many unnecessary counts, which are unlawfully and wrongfully set forth in said indictment to the great preju-

dice of said defendant; therefore, said defendant prays judgment of this court that said demurrer and each thereof be allowed."

In the answer which was interposed by the people to the demurrer it was alleged, viz.:

*First.* That the facts therein alleged are not true.

*Second.* That if true they are no grounds for the demurrer and constitute no defense to the indictment.

The record further stated that after hearing defendant's counsel in support of said demurrer, and the district attorney in opposition thereto, it was ordered by the court that the demurrer be disallowed and the defendant allowed to plead to the indictment, and he thereupon interposed the plea of "not guilty." It is now insisted by the learned counsel for the defendant that an error was committed in overruling the demurrer.

Section 273 of the Code of Criminal Procedure abolished "all the forms of pleading in criminal actions" existing prior to its adoption, and it prescribed that "hereafter the forms of pleading and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this Code."

Section 275 of the Code of Criminal Procedure is as follows, viz.: "The indictment must contain: 1. The title of the action, specifying the name of the court to which the indictment is presented and the names of the parties. 2. A plain and concise statement of the act constituting the crime, without unnecessary repetition."

Section 276 provides, viz.: "The indictment should be signed by the district attorney, and may be substantially in the following form:" Then following this in that section is a skeleton of an indictment with various blanks in respect to the formal parts of the indictment, and in brackets are found these words, viz.: ["Here insert the name of the crime," etc.]

It is to be observed that in none of the statutory regulations relating to an indictment, is there an inhibition against using several counts, or against varying the language in different counts to meet any aspect of the evidence which may be presented tending to support the general charge against the defendant.

A general knowledge of the prolix and elaborate indictments heretofore used under the common law, which is the foundation of

our criminal practice in this State, as well as a recall of the modes that were in use prior to the adoption of the Code of Criminal Procedure, legitimately lead to the supposition that the object of the legislature in adopting that section, relating to pleadings in criminal actions, to which we have already referred, was to enable the pleader, " in plain and concise statements," to set forth the accusations against the prisoner, without any unnecessary repetition.

From a reading of that section we are not induced to believe that it was the intention of the legislature to deprive the people of the right to state the acts constituting the supposed crime in different counts, in language appropriate to meet such circumstances and features of the event, as should be developed in the full and careful investigation which takes place in the progress of a trial. Nor can we suppose that it was the intention of the legislature to limit the indictment to a single statement in one count of the offense charged against the accused.

Evidently it was the intention of the legislature to prescribe a more liberal and flexible system of pleadings in criminal cases than that which obtained under the common law, or which was in vogue in this State prior to the adoption of the Code of Criminal Procedure.

In support of this view section 684 must be borne in mind. It is as follows, viz. : " Neither a departure from the form or mode prescribed by this Code in respect to any pleadings or proceedings, nor an error or mistake therein renders it invalid, unless it have actually prejudiced the defendant or tend to his prejudice in respect to a substantial right."

The position taken by the learned counsel for the defendant in this case now in hand, we think, is fully met and answered by the opinion of the Court of Appeals, delivered in April, in the case of *The People* v. *Rugg* (98 N. Y., 537). We, therefore, make the following quotation from the opinion in that case, viz. : " Upon the trial the defendant interposed a demurrer to the indictment against him upon various grounds, which the court overruled and the defendant excepted to the decision. It is urged that this was erroneous for the reasons which will presently be considered. It is said that the indictment was drawn in defiance of sections 273 and 275 of the Code of Criminal Procedure."

" By section 273 all forms of pleading in criminal actions heretofore existing are abolished and the forms provided by the Code substituted in their place. Section 275 provides for the form of the indictment and declares what it shall contain, and, among other things, a plain and concise statement of the act constituting the crime without unnecessary repetition. The claim that the provisions of this section have been violated cannot be upheld, nor can it be said that the phraseology employed in the indictment is so uncertain and difficult as not to be comprehended upon a perusal of the same, or that it does not intelligibly and fairly present, in language sufficiently plain and concise, the real character of the offense intended to be charged against the defendant. We are unable to perceive any such deviation from the rule prescribed by the statute as would justify the conclusion that the indictment is demurrable on that account. The indictment contains four different counts, charging the commission of the offense in somewhat different forms. While to some extent it follows the old form prior to the enactment of the Code of Criminal Procedure, it cannot be said that it contains useless and unnecessary words which violate its provisions. In view of the circumstances connected with the crime, with which defendant was charged, it contained a plain and concise statement of the crime alleged within the spirit and meaning of the Criminal Code. It is not pointed out to us, nor are we able to discover any language in the indictment which evinces a disregard of the provisions of the Code or a deviation from the principles intended to be established thereby.

Nor is there any ground for the claim that the indictment charges more than one crime. Although it contains different counts, it merely states the commission of the same offense in different forms so as to meet the evidence which might be presented upon the trial. As there was no direct proof by an eye-witness of the commission of the offense charged, and as it was connected with the commission of other crimes, it was entirely competent for the pleader to allege in different counts such facts as might, by possibility, be presented upon the trial, and as the proof as to these could not be anticipated with exactness, such allegations were proper and within the provisions of the Criminal Code. There is nothing in these provisions which compels the

pleader to confine the indictment to a single statement of the facts where the proof is uncertain. The object of the pleading is to inform the defendant of the crime alleged against him, and when this is done without needless repetition, it cannot be urged that he has not been fully advised of the character of the crime for which he is indicted.

Nor can it be said that each of the counts charges the crime to have been committed in precisely the same manner and by precisely the same means. On the contrary, the indictment contains allegations in each of the counts showing a somewhat different state of facts, and varying the circumstances under which the crime is alleged to have been committed. This is in strict accordance with the provisions of the Code of Criminal Procedure, and furnishes no ground for a demurrer, and there was no error committed by the judge in overruling the same." (See, also, *Cox* v. *The People*, 80 N. Y., 500 ; *Dolan* v. *The People*, 64 id., 485.)

From an inspection of the record we may reasonably infer that there was no eye witness of the crime, and that the people were required to establish the accusations made against the prisoner in the indictment by circumstantial evidence, and that the means by which the crime was committed were not clearly and definitely ascertainable or ascertained at the time the indictment was prepared ; hence the the case was a proper one for the application of the proposition given in section 279 of the Code of Criminal Procedure, which is as follows, viz. : " The crime may be charged in separate counts to have been committed in a different manner or by different means ; and where the acts complained of may constitute different crimes, such crimes may be charged in separate counts."

As has already been stated, there was no demurrer interposed to the sixth, seventh and ninth counts of the indictment, and upon that record it is not to be said that the conviction did not take place under either one or the other of these counts in the indictment.

It is well settled that where there is one good count in an indictment, and evidence to support it, the conviction must be sustained, although the indictment contained other counts which are defective. (*People* v. *Davis*, 56 N. Y., 95 ; *Phelps* v. *People*, 72 id., 365 ; *Pontius* v. *People*, 82 id., 339 ; *Hope* v. *People*, 83 id., 419.)

We are of the opinion that no error was committed by the court

in refusing to compel the district attorney to elect under which charge in the indictment he would try the defendant. The application made in that behalf was addressed to the discretion of the court, and the court committed no error in denying the application. (*Hawker* v. *People*, 75 N. Y., 487; *Armstrong* v. *People*, 70 id., 38; Code of Crim. Pro., sec. 684.)

*Second.* It appears from the record that on the 9th day of December, 1884, in the Oyer and Terminer of Broome county, that a motion in arrest of judgment was made. The language of the record is as follows, viz.: "The defendant's attorney thereupon moved an arrest of judgment on the ground that Lieutenant-Governor Hill, who, it is known, is to be governor of the State of New York on the first day of January next, and to whom any application of pardon for defendant must be made, appeared as counsel for the people in this case," which motion was denied by the court, and defendant's counsel excepted. We think the court committed no error in denying the motion. There is no provision of the Constitution of the State, or the statutory law, which prevents the lieutenant-governor from aiding a district attorney in the prosecution of a capital case. Surely, a lieutenant-governor of the State, even though it be known that he is to succeed to the office of governor, has a legal and constitutional right to aid in the enforcement of the criminal laws of the State.

Section 6 of article 4 of the Constitution, provides that in case of resignation of the governor, the powers and duties of that office shall devolve upon the lieutenant-governor for the residue of the term

Section 7 of that article provides, " if during a vacancy of the office of governor the lieutenant-governor shall be impeached, displaced, resign or die, or become incapable of performing the duties of his office, or be absent from the State, the *president* of the senate shall act as governor until the vacancy be filled or the *disability* shall cease."

There was nothing before the Oyer and Terminer to indicate that the presence of the lieutenant-governor as counsel for the prosecution of the defendant, has in any manner impaired, lessened, interfered with or prejudiced the rights of the defendant. It was very proper for the Court of Oyer and Terminer to assume that the duties devolving upon the executive branch of the government, in

accordance with the provisions of the Constitution, would be properly performed whenever occasion should arise for their enforcement.

Again, section 467 declares that a motion in arrest of judgment is an application that no judgment be rendered upon a verdict against the defendant, and that section provides that such application " may be founded on any of the defects in the indictment mentioned in section 323." The grounds enumerated in section 323 do not embrace the ground or objection relied upon by the defendant in the motion for arrest of judgment now under consideration. An enumeration of the grounds upon which an arrest of judgment may be made in that section of the statute, was probably intended to exclude any other grounds. The exception taken by the defendant to the denial of a motion for arrest of judgment, presents no error.

*Third.* Our attention is directed to an order made by the Oyer and Terminer, denying a motion made for a new trial, made upon affidavits, upon the alleged irregularities or misconduct of the jury, subsequent to the charge of the court and before the delivery of their verdict. It seems that the jury had been kept together during the progress of the trial under the charge of an officer, and " took their dinner in the dining-room of the restaurant of Icke & Hanley, on Collier street, in the city of Binghamton," at tables separated and apart from those occupied by other people. The charge to the jury was finished about half-past six o'clock in the evening, and two officers were sworn to keep the jury in accordance with the provisions of the statute. The jury was taken to the restaurant and seated at the tables theretofore used by them, and the same servant girls who had been accustomed to wait upon them asked them respectively for their orders for their meal, and the orders were filled and they received their supper in usual mode and then returned to the court-room and deliberated upon their verdict.

Numerous circumstances relating to the events to which we have referred were shown in the affidavits read in support of the motion for a new trial; answering affidavits were read. In the determination of the motion, the Court of Oyer and Terminer was called upon to ascertain and determine whether the jury had " been guilty of any misconduct by which a fair and due consideration of the case has been prevented." (Code Crim. Proc., § 465, subdiv. 3.) It has been held in numerous cases that an irregularity which did

not prejudice the substantial rights of the defendant " would not vitiate the verdict unless it be shown that the defendant was prejudiced thereby." (*People* v. *Draper*, 28 Hun, 2; *Hartung* v. *People*, 4 Park. Cr. R., 319; *Ostrander* v. *People*, 28 Hun, 48.) We think it was very clearly and satisfactorily shown in the opposing affidavits that nothing transpired in the presence of the jury calculated to, or which did, interfere with or influence their deliberations or prevent a fair and due consideration of the case. We therefore approve of the conclusion reached by the learned trial judge and sustain the order made. We have considered the questions presented to us in this record, and are of the opinion that the conviction and judgment should remain.

Our decision, therefore, will be that the verdict and judgment and orders be affirmed, and that the judgment of the Oyer and Terminer of Broome county be enforced.

FOLLETT and MERWIN, JJ., concurred.

Judgment, conviction and orders affirmed.