THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ROGER C. DALES, Appellant.

Third Department, January 19, 1955.

*Joseph P. Leary* and *Francis H. Anderson* for appellant.

*Richard J. Bookhout, District Attorney,* for respondent.

BERGAN, J. Defendant had been engaged in the business of selling automobiles. On October 23, 1952, he delivered to the Citizens National Bank and Trust Company of Oneonta a promissory note for $700 payable in thirty days purporting on its face to be signed by Robert W. Utter, as maker, and containing defendant's own signature as indorser.

The note recited that it was given as part of the purchase price of a 1944 Chevrolet one-half ton pick-up truck and contained the usual recitals made in such a chattel note, giving the holder right to immediate recourse against the chattel on

default. The note was given in renewal of a previous note which was taken up.

Defendant has been convicted of forgery second degree upon an indictment which charges that " with intent to defraud " he " uttered * * * and put off as true " the note given October 23d on which the signature of the maker Utter " had been forged ".

Utter testified he did not sign the note; defendant testified he himself signed Utter's name, but that in doing so he had Utter's authority. Utter denied giving the authority. There is clear proof in the record that defendant had not sold to Utter the truck described in the note and that neither the purported maker nor the defendant indorser had title to the truck thus described in the instrument.

It was established, as well, that the note was not paid when due; and, of course, the right of the bank to recourse against the nonexistent vehicle which the note purported in elaborated terms to afford the holder in case of default was quite illusory.

Appellant is unable to demonstrate to our satisfaction that it was not well within the frame of a fair factual issue for the jury on this record to believe Utter's testimony that defendant had no authority to sign the note as maker rather than defendant's testimony that he had such a right.

When the jury resolved the issue of authority in this way it could readily find that the signature was a forgery by defendant's own writing; and it is undisputed that defendant uttered the instrument by its delivery to the bank.

A somewhat closer question is presented whether the uttering of a forged note " with intent to defraud " as pleaded in the indictment has been established sufficiently to support the jury's finding in this respect. It is the act of uttering of a forged instrument " with " intent to defraud that constitutes the crime when the relevant portions of section 887 of the Penal Law opening paragraph and last paragraph of subdivision 4 are read together.

The proof makes it rather clear that the bank would not have extended Utter, the maker, credit in his own name and hence probably would not have depended on the genuineness of his signature and the consequent right of recourse against him. Still the bank ought to have had the right to know whether or not the signature of a maker of commercial paper was genuine when the paper was offered even though the note replaced other paper perhaps of no more worth.

It has been held that an intent to defraud arising in connection with a forgery need not necessarily be an intent to defraud the party directly affected by the forgery itself. The leading case on this subject is *People* v. *Anderson* (210 App. Div. 59, affd. 239 N. Y. 534) where forgery by the falsification of books of an organization by an officer and an employee was not shown to have adversely affected the organization, i.e., the fraud caused no direct loss to the organization immediately concerned.

But what constitutes " fraud " in this connection was liberally viewed by the court which was of opinion that the falsification of facts was " capable " of " being prejudicially used against " the organization (p. 66) and that the jury could find that the falsification " had a legal tendency " to affect the organization and did tend to affect adversely the government's right to income taxes (p. 63).

The rule was summarized more recently by Mr. Justice CALLA-HAN with a characteristic precision and care in *People* v. *Sherman* (264 App. Div. 274, 277). It is " not essential " in a forgery case, he wrote, to establish an intent " to defraud any particular person or corporation ".

This theory of the sufficiency of the general effect of fraudulent purpose to meet the statute in the uttering of a forged instrument beyond its direct impact on the party concerned with it can be carried by analogy a step further; and in thus being moved on, can be applied to the facts of the case before us.

The instrument here found to have been forged could also have been found in other respects, closely integrated in purpose and effect, to have been fraudulent in purporting to carry with it a right of recourse against a described chattel which did not exist. Such fraud could have been found to have accompanied and been part of the uttering of the forged instrument. The words " with intent to defraud " in the statute imply some constituent element in the crime additional to the uttering itself and the intent may be manifested in a variety of independent ways and demonstrated by proof of a variety of independent acts.

A fraudulent purpose may be shown by the words which accompany the act of utterance of the instrument; by a multitude of circumstances, acts or conditions which might lull another party to acceptance; or by providing a means of overreaching or advantage.

From all this it may be seen that an intent to defraud may be demonstrated in connection with the utterance of the instrument

by things integral to the instrument itself and demonstrable on its face, as here by the false statement of the existence of a chattel as security for the forged instrument upon which a jury could find readily enough that the bank relied. The literal words of the statute seem adequately met in this situation. The jury could find the defendant uttered the forged note; it could find from the absence of security which the note recited existed, that it was uttered with intent to defraud.

The jury could, perhaps, also find on this record that the utterance of the instrument with the signature of Utter not signed by his authority was a fraud on the bank in the sense that, whether it would have regarded Utter's credit as good or not, it was entitled to know whether it had received genuine or spurious commercial paper.

There is, too, the secondary effect on the bank resulting from examination of its affairs by public authority and the effect on its standing credit of forged paper in its portfolio. This secondary effect is thus something similar to the effect on the organization whose books were forged without direct injury to itself considered in *People* v. *Anderson* (*supra*).

The court charged the jury on intent to defraud in very broad terms; and somewhat more specific amplification on this aspect of intent asked by defendant was given by the court. We think the record sufficiently establishes the uttering of the forged instrument and the intent to defraud to warrant conviction.

As part of the People's case proof of three unrelated transactions not pleaded in this indictment was offered on the question of intent. The receipt of this evidence is one of the main arguments of the appellant for reversal on appeal. The transactions varied somewhat from each other, but they have some similarity and some relevancy to defendant's intent in the case before us. We describe these transactions, proof of which was received by the trial court, in general terms; but sufficiently to demonstrate their bearing on the legal problem raised by the admission of proof concerning them.

Each of the transactions related to the negotiation of a note for which a motor vehicle was described as collateral by the defendant with the same bank. The occurrences all were within three months before October 23, 1952, the earliest being August 11th. In one case (Travis) there was proof that the signature of the maker was not signed by him and was not signed by his authority, but there was a genuine motor vehicle.

In the second case (Harkenreader) there was proof of a genuine signature by the maker; but proof that the described automobile did not exist; that the manufacturer had never produced the vehicle described; and the serial number was similar and the motor number identical with an entirely different vehicle. In the third case (Gilmore) the purported maker refused on constitutional grounds to answer whether the signature on the note was his. There was proof that he had never owned the car which was described as collateral in the note; and while there is proof that defendant at one time had owned the car he had sold it many months earlier to another buyer and had no title when the note was given.

These transactions were all with the same bank with which the note in issue was negotiated, and if found by the jury to have occurred are sufficiently similar in character and in time to warrant consideration on the question of intent under a New York rule of evidence by now well established.

Where intent, which is fundamentally a state of mind, is quite manifest from the nature of the crime itself, as in a simple larceny or a manifest assault, similar acts are deemed wholly inadmissible. But where the act is equivocal in character and intent is a statutory element of the crime itself, it has been regarded as reasonable to allow proof of similar acts to show that what might seem innocent or mistaken had in fact the criminal purpose which the prosecution is required by law to show.

The acts must be similar enough to throw rational light on the question of intent. They need not be identical. Thus the three transactions offered by the People on the question of intent are sufficiently like the crime charged to have some bearing on intention, or so the jury might reasonably find.

The pattern of proof here is rather similar to that followed in *People* v. *Hudson Valley Constr. Co.* (217 N. Y. 172). The charge there was larceny from the State by false pretenses. Since the good faith with which defendants had acted became an issue, the court allowed proof of other larcenies on the question of intent. Some of the other larcenies were effected by trick or device, and while not identical with the larceny under consideration at the trial were regarded by the court as " generally " to have been " sufficiently akin to " the charge at issue to make them admissible (p. 178).

In *People* v. *Katz* (209 N. Y. 311) the charge was grand larceny effected by an elaborate and complex conspiracy. Proof was

admitted on the question of defendant's intent which could have been innocent under the complicated facts which made up the conspiracy, that defendant had made statements in conversations which could be treated as admissions of another elaborate and somewhat similar conspiracy at about the same time. There is a good discussion by Judge WERNER of the relevancy of complicity in another conspiracy in similar circumstances to the case then before the court.

In *People* v. *Marrin* (205 N. Y. 275) defendant was accused of using a forged mortgage to obtain money from a client and proof of eight " similar mortgages " was held admissible. The crucial function of the rule, as Judge VANN clearly demonstrated, is to exclude mistake or inadvertence on the part of the defendant (p. 281). There is a graphic statement of the rule. Its purpose is to show " similar acts, done under similar circumstances at about the same time, with intent to defraud the same person by the same means " (p. 280). See, also, to similar effect discussions of the problem in *People* v. *Shulman* (at 80 N. Y. 373) and in *People* v. *Dolan* (186 N. Y. 4). The rule to be found in these cases was given a close-knit cohesion in the opinion by CARDOZO, J., in 1926 in *People* v. *Gerks* (243 N. Y. 166, 170). " Repetition " he concluded, " reduces the likelihood of mistake or mere coincidence ".

We regard the proof thus adduced as admissible on the question of defendant's intent; and we regard the jury sufficiently instructed on the function which this evidence served in the case. The other questions raised on appeal are not substantial; and looking closely at the whole of the voluminous record before us we find that the defendant had a fair trial.

Having reached this conclusion on the merits of the verdict and addressing ourselves then to the sentence which we felt required to review under section 543 of the Code of Criminal Procedure, we advised counsel on both sides of this result and requested that the probation records and other written material considered by the Judge in passing sentence be sent to the court. The District Attorney advised us by letter that the Judge had no probation report or other written material before him in passing sentence.

Accordingly on September 22, 1954, we entered the following direction (284 App. Div. 858): " The parole officer of Otsego County is directed to make and file with the clerk of this court a report on the question of sentence of defendant now before the court for review; and the Director of Probation, Division

of Probation, Department of Correction, is requested to tender such aid and assistance in the making of such report as may be indicated.''

The sentence imposed by the court was two and one half to five years. The defendant is a first offender, is married, has children. A careful and adequate probation report prepared by the probation officer of Fulton County to whom the case had been referred for study reached us in December, 1954.

On reviewing this full report of defendant's background and potential for reformation, we are of opinion that it would be preferable to extend as wide as possible the discretion of the State Board of Parole in respect of the actual time to be served in prison.

The judgment should be modified to provide that the minimum sentence shall be one year and the maximum five years and as thus modified the judgment should be affirmed.

FOSTER, P. J., COON and IMRIE, JJ., concur.

Judgment modified to provide that the minimum sentence shall be one year and the maximum five years and, as thus modified, the judgment is affirmed.