J. Irwin Shapiro, J.
Defendant applies for an order permitting an inspection of the Grand Jury minutes or, in the alternative for an order dismissing the indictment upon the ground that the evidence before the Grand Jury was insufficient to warrant its return.
In an eight-count indictment, defendant is charged with forgery in the second degree for having, with intent to defraud, *951 forged and uttered four separate writings. A copy of each writing is set forth or referred to in each applicable count. Each of the writings consists of an order form for certain merchandise clipped from a newspaper advertisement in which the defendant, in printing, inserted the name and address of the complainant. The forged writing set forth in the first count of the indictment is illustrative of the others. It reads:
‘' book-of-the-month club, Inc. A122-7-1 345 Hudson Street, New York, N. Y. 10014
“ Please enroll me as a member of the Book-of-the-Month Club and send me the three volumes whose numbers I have indicated in boxes below, billing me $1.00 for all three volumes. I agree to purchase at least — three additional monthly Selections — or Alternates — during the first year I am a member. I have the right to cancel my membership any time after buying these three books. If I continue after this trial, I will earn a Book-Dividend Credit for every Selection — or Alternate * I buy. Each Credit, upon payment of a nominal sum, will entitle me to a Book-Dividend which I may choose from a wide variety always available. (A small charge is added to all shipments to cover postage and mailing expense.) please note: Occasionally the Club will offer two or more books at a special combined price. Such purchases are counted as a single book in fulfilling the membership obligation.
‘ ‘ INDICATE BY NUMBER THE
THREE BOOKS YOU WANT................... |291| 13251 ¡343]
Mr.
Mrs.
Miss
) [contained in original, but omitted by the court]
).....................................................
)
[contained in original, but omitted by the court]
Address...............................................
City..................................................
The trademarks book-of-the-month club and book-dividend are registered by Book-of-the Month Club, Inc., in the U. S. Patent Office and in Canada. |7-55| ”
The complainant, a widow, in an effort to keep her son in medical school is holding down two positions, one during the day and one in the evening. Much to her chagrin and surprise, from time to time, hundreds of articles of merchandise which she did not order and which she did not want, were, in her absence, delivered to her apartment together with appropriate bills *952 therefor. What motivated defendant to pursue this course of conduct is not ascertainable from the record but what does clearly appear is that defendant by his actions caused complainant considerable annoyance and embarrassment plus the expense of returning or arranging for the return of the unwanted merchandise.
It is clear that complainant’s hand-printed name and address on the four order forms in question were written by defendant and delivered by him to the respective advertisers. The proof before the Grand Jury also establishes the following: The first order form was an order on the Book of the Month Club for three books at a special price and the undertaking to purchase at least three additional monthly selections during the first year. Complainant found the three books presumably ordered by her at her apartment upon her return home from business. As a practical matter she was compelled to return them, and to disclaim her undertaking (contained in the order) to purchase three additional books lest she be sued for their purchase price. Complainant also received, on similar forged orders, an “ art seminars in the home” portfolio from the Book of the Month Club and a pair of shoes from B. Altman & Co., both of which items she also returned. On another occasion she found a telegram at her home from Hammacher & Schlemmer inquiring whether her order (another forgery) for an English luncheon basket was for the $75 or the $50 one. Again as a matter of practical necessity, she had to telephone Hammacher & Schlemmer and inform them that she did not place any order with them. These episodes, apart from the inconvenience and annoyance attendant thereon to all concerned, except the defendant, entailed the cost of postage, telegrams, telephone calls and overhead.
Defendant contends that since the instruments or writings set forth in the indictment contain no “ erasures, obliterations, changes of signatures or other vital changes or alterations of an instrument,” and since there was here no “ possibility of some person being defrauded of something, ’ ’ nor the obtaining of an ‘1 unconscionable advantage,” there is no basis for a charge of forgery in the second degree. If his contentions were legally sound it would be strange indeed. Fortunately they are all utterly without merit.
‘ ‘ Erasures, obliterations, changes of signatures or other vital changes or alterations of an instrument, ’ ’ are not the only means by which a forgery may be committed. Section 880 of the former Penal Law (under which defendant is charged) defines forgery in the following terms: “ Terms forge, forged and *953 forging.— The expressions 1 forge, ’ ‘ forged ’ and ‘ forging, ’ as used in this article, include false making, counterfeiting and the alteration, erasure, or obliteration of a genuine instrument, in whole or in part, the false making or counterfeiting of the signature, of a party or witness, and the placing or connecting together with intent to defraud different parts of several genuine instruments.” (Emphasis supplied.) Thus the “false making” of an instrument constitutes forgery and that term includes a fictitiously made instrument which falsely purports to be the writing of another. (16 Words and Phrases, False Making, p. 236.) Consequently the making and uttering of the order forms written by the defendant come within the definition of forgery set forth in section 880 of the Penal Law (People v. Berman, 197 N. Y. S. 2d 346, 351, 353.)
However, even if the order forms could not properly be construed to be “ falsely made ” instruments as defined by section 880, they would nevertheless come within the scope of that portion of that section which refers to an instrument bearing a falsely made signature as a forgery despite the fact that the names thereon are printed. A written instrument is there defined as: “ An instrument partly written and partly printed, or wholly printed with a written signature thereto, and any signature or writing purporting to he a signature of, or intended to hind an individual, a partnership, a corporation or association or an officer thereof, is a written instrument or a writing, within the provisions of this article.” (Emphasis supplied.) Complainant’s name printed upon the order forms purported to make them her acts. They were not such. That amounted to the false making of a signature, and the fact that the name was printed and not handwritten is of no legal consequence. (People v. Berman, supra, p. 353.) In Berman, in which the charge of forgery was predicated upon a completely printed or typed card bearing the name of a real estate agent and a direction to tenants to pay their rent to defendants, the court, in holding that there was a legal forgery, said (pp. 353-354): “ Several statutes have a direct bearing on this matter. Section 46 of the General Construction Law reads: 1 The term signature includes any memorandum, mark or sign, written, printed, stamped, photographed, engraved or otherwise placed upon any instrument or writing with intent to execute or authenticate such instrument or writing ’. Of similar import is Section 3 (7) of the Penal Law which provides: ‘ The term “ signature ” includes any memorandum, mark or sign, written with intent to authenticate any instrument or writing, or the subscription of any person thereto ’. Finally, Section 3 (8) of the Penal *954 Law states: ‘ The term 11 writing ’ ’ includes both printing and writing ’.
‘ ‘ Beading those sections together, it seems clear that when the name of a company is printed on an instrument with the intent of giving authenticity to that instrument, that name is considered a signature under the law. Therefore, when the name of a company is printed upon a document for such a purpose without that company’s knowledge or consent, the process becomes the false making of a signature. As the subject of the alleged forgery in the instant case had a falsely made signature which wrongfully represented that Cross & Brown Company was a party to the transaction in question, it would seem to come within the purview of Section 880 relating to a falsely made signature.”
The order forms here in question also come within the definition of forgery in the second degree set forth in section 887 of the former Penal Law, which reads: “A person is guilty of forgery in the second degree who, with intent to defraud: * * *
“ 2. Forges * # *
“ An instrument or writing, being or purporting to be the act of another, by which a pecuniary demand or obligation is or purports to be or to have been created, increased, discharged, or diminished, or in any manner affected, or by which any rights or property whatever are or purport to be or to have been created, transferred, conveyed, discharged, increased, or diminished, or in any manner affected, the punishment for forging, altering, or counterfeiting which is not hereinbefore prescribed, by which false making, forging, altering, or counterfeiting, any person may be bound, affected or in any way injured in his person or property”. (Emphasis supplied.)
Defendant’s additional contention is that there is here an absence of “ intent to defraud,” an integral ingredient of a charge of forgery. He argues there was no “possibility of some person being defrauded of something ”. There is no real substance to this claim. In the first place, the sending by defendant of the false order forms for merchandise to be sent to complainant certainly caused the advertisers unwarranted expense in filling orders. In fact, Hammacher & Schlemmer was caused to send a telegram of inquiry to complainant because her telephone number was unlisted. It is obvious, too, that complainant was caused to suffer some monetary loss, however slight, in returning the merchandise. The intent to defraud required by the statute is not precluded by the fact that defendant did not stand to profit from his forgeries. In People v. Dales (285 App. *955 Div. 214, affd. 309 N. Y. 97) the Appellate Division said (p. 217): ‘ ‘ It has been held that an intent to defraud arising in connection with a forgery need not necessarily be an intent to defraud the party directly affected by the forgery itself. The leading case on this subject is People v. Anderson (210 App. Div. 59, affd. 239 N. Y. 534) where forgery by the falsification of books of an organization by an officer and an employee was not shown to have adversely affected the organization, i.e., the fraud caused no direct loss to the organization immediately concerned.
‘ ‘ But what constitutes 1 fraud ’ in this connection was liberally viewed by the court which was of opinion that the falsification of facts was ‘ capable ’ of 1 being prejudicially used against ’ the organization (p. 66) and that the jury could find that the falsification ‘ had a legal tendency ’ to affect the organization and did tend to affect adversely the government’s right to income taxes (p. 63).
“ The rule was summarized more recently by Mr. Justice Callahan with a characteristic precision and care in People v. Sherman (264 App. Div. 274, 277). It is ‘ not essential ’ in a forgery case, he- wrote, to establish an intent ‘ to defraud any particular person or corporation ’. ’ ’
Defendant’s motion is in all respects denied.